UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Patrick Jay Wall, | ) C/A No. 9:07-3199-HMH-GCK |
| Plaintiff, | ) |
| vs. | ) |
| Gregory Knowlin, Warden;<br>NFN Bradshaw, Associate Warden ;<br>Lt. NFN Pugh, Over Rimini ;<br>Cpl. NFN Jones, Over Rimini B Wing Unit ;<br>Mr. NFN Baxter, Counselor in Wyboo, | ) **Report and Recommendation** |
| Defendants. | ) |



The Plaintiff, Patrick Jay Wall (Plaintiff), proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983.[1] Plaintiff is an inmate at Turbeville Correctional Institution (TCI), a facility of the South Carolina Department of Corrections (SCDC), and files this action *in forma pauperis* under 28 U.S.C. § 1915. The Complaint names SCDC employees as Defendants.[2] Plaintiff claims the Defendants: (1) were deliberately indifferent to his medical needs, (2) subjected him to cruel and unusual punishment, (3) denied him access to the courts, and (4) threatened him verbally. Plaintiff seeks monetary damages and injunctive relief. The Complaint should be dismissed for failure to state a claim upon which relief may be granted.

---

[1] Pursuant to the provisions of 28 U.S.C. §636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., the undersigned is authorized to review such complaints for relief and submit findings and recommendations to the District Court.

[2] Title 28 U.S.C. § 1915A (a) provides that "[t]he court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."

## *Pro Se* and *In Forma Pauperis* Review

Under established local procedure in this judicial district, a careful review has been made of the *pro se* Complaint pursuant to the procedural provisions of 28 U.S.C. § 1915; 28 U.S.C. § 1915A; and the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996). This review has been conducted in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951 (4th Cir. 1995) (*en banc*); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

The Complaint herein has been filed pursuant to 28 U.S.C. § 1915, which permits an indigent litigant to commence an action in federal court without prepaying the administrative costs of proceeding with the lawsuit. To protect against possible abuses of this privilege, the statute allows a district court to dismiss the case upon a finding that the action "fails to state a claim on which relief may be granted" or is "frivolous or malicious." § 1915(e)(2)(B)(i), (ii). A finding of frivolity can be made where the complaint "lacks an arguable basis either in law or in fact." *Denton v. Hernandez*, 504 U.S. at 31. Hence, under § 1915(e)(2)(B), a claim based on a meritless legal theory may be dismissed *sua sponte*. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Allison v. Kyle*, 66 F.3d 71 (5th Cir. 1995).



This Court is required to liberally construe *pro se* documents, *Estelle v. Gamble*, 429 U.S. 97 (1976), holding them to a less stringent standard than those drafted by attorneys, *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) *(per curiam)*. Even under this less stringent standard, however, the *pro se* Complaint is subject to summary dismissal. The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999), or construct the plaintiff's legal

2

arguments for him, *Small v. Endicott*, 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court, *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, (4th Cir. 1990).

## Background

On April 27, 2007, Plaintiff states he was prescribed glasses for an unspecified eye problem. Plaintiff indicates that his prescription for glasses had not yet been filled when he arrived at TCI on May 22, 2007. Plaintiff put in a request to talk to TCI medical staff about his eye condition on May 23, 2007. Plaintiff was seen by a nurse on May 25, 2007, and scheduled for a doctor's appointment the following week. Plaintiff indicates that he saw the TCI doctor, but received no "help in any way." Plaintiff was taken to Kirkland Correctional Institution on June 19, 2007, to see an optometrist. Plaintiff states the optometrist performed an eye examination and provided safety glasses, but stated there was nothing more he could do. Plaintiff states the optometrist also indicated that "someone on the outside of SCDC . . . with better equipment" would have to look at Plaintiff's eyes. Plaintiff states that he is "unable to hardly see anything" and that he has not been provided with prescription glasses to date. Plaintiff indicates that the Defendants are, thus, being deliberately indifferent to his medical needs and providing "improper medical treatment."



Plaintiff's cruel and unusual punishment claims stem partly from his unit, Rimini-B Wing, being placed on "dead-lock" on June 17, 2007, after an inmate was assaulted by other prisoners and attempted to hang himself. Plaintiff states he remained on lock-down status until June 29, 2007. Plaintiff indicates he was provided breakfast, lunch, and dinner each day of lock-down to consist of the

3

following: Breakfast- two boiled eggs and two pieces of bread; Lunch- one piece of turkey ham and two pieces of bread; Dinner- two pieces of turkey ham, four pieces of bread, and a piece of cake. Plaintiff states that he received no milk, tea, or juice with many of his meals and only received one "hot" meal during the entire period. Plaintiff also states that he was allowed only three showers during the twelve (12) day period, with the first shower being on June 23, 2007. Plaintiff credits Defendant Jones for providing juice or tea with some of Plaintiff's meals during lock-down, and for letting Plaintiff take his first shower during that period. Plaintiff indicates he spoke with Defendant Bradshaw on June 27, 2007, and discussed his concerns. Plaintiff states he received his "hot meal" the next day and was released from lock-down status shortly thereafter.

In addition to the limited food and limited opportunities to shower, Plaintiff states he was extremely hot during his time in lock-down, due to the unit having no air conditioning. Plaintiff states the "sweat would just pour off of me" and soak his clothes. However, Plaintiff does state that he had access to a sliding window that provided ventilation and cooler air "if a breeze is blowing outside."

Plaintiff further states that inmates are subjected to cruel and unusual punishment by officers who "beat us YOA like we are animals." Plaintiff alleges that officers put inmates in hand-cuffs and then subject them to physical abuse. Plaintiff's Complaint discusses mistreatment of the inmates in general terms and fails to provide any specific instances where Plaintiff was subjected to such excessive force/cruel treatment. Plaintiff further fails to indicate whether any of the named Defendants perpetrated such behavior.



Plaintiff's access to court claim arises from his being unable to use the prison's mail-room. Plaintiff states that, since being moved to "Wyboo B Wing Unit," he has been denied the right to pick up his legal mail and also denied the right to send out legal motions "and stuff dealing with my law-

suit." It is unclear, from the pleadings, exactly when Plaintiff was moved to Wyboo B Wing Unit, however he appears to have been in Rimini B Wing Unit until his release from lock-down on June 29, 2007.

Plaintiff's final claim results from an alleged verbal threat made by Defendant Baxter on September 13, 2007. Plaintiff indicates "auditors" were visiting the Wyboo Unit and Plaintiff had a brief conversation with one of them. When the auditors left, Defendant Baxter stated "oh, you want to say naivete [negative?] things to the vistors [sic] . . . I got something for you." Plaintiff indicates this statement was made "in the way of a threat."

## Discussion

Plaintiff first claims that the Defendants have provided "improper" medical treatment and/or have been deliberately indifferent to his medical needs. The law is clear that correctional systems are required to provide medical care to inmates, and detention facilities are required to provide medical treatment to detainees. *Helling v. McKinney*, 509 U.S. 25 (1993):

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being. . . . The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs – e.g., food, clothing, shelter, medical care, and reasonable safety – it transgresses the substantive limits on state action set by the Eighth Amendment.

Id. at 32 (*quoting DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 199-200 (1989)). *See also Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990).

However, with respect to medical care, a prisoner in a § 1983 case "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The Supreme Court in *Estelle v. Gamble* pointed out that not

5

"every claim by a prisoner that he has not received adequate medical treatment states a violation." *Estelle v. Gamble*, 429 U.S. at 105. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). In addition, while the provision of medical care by prison or jail officials is not discretionary, the type and amount of medical treatment is discretionary. *See Brown v. Thompson*, 868 F. Supp. 326 & n. 2 (S.D.Ga. 1994); *Hoffman v. Tuten*, 446 F. Supp. 2d 455, 471 (D.S.C. 2006). *See also Walker v. Peters*, 863 F. Supp. 671, 674 (N.D.Ill.1994)("mere disagreements between doctor and patient about the course of treatment do not reflect 'deliberate indifference' on the part of the former").

In *Lamb v. Maschner*, 633 F. Supp. 351, 353 (D.Kan. 1986), the district court ruled that the proper inquiry is whether the prison or jail provided any treatment, and that the plaintiff's agreement or disagreement with the treatment is irrelevant:

> Even though plaintiff and defendants have a differing opinion as to the proper treatment to be received by plaintiff, this does not in and of itself state a constitutional violation. *See Smart v. Villar*, 547 F.2d 112 (10th Cir. 1976). Therefore, the key question in this case is whether the defendants have provided plaintiff with some kind of treatment, regardless of whether it is what plaintiff desires.

In the instant case, Plaintiff states that he has seen medical staff about his eye condition on at least three occasions since arriving at TCI. Plaintiff also indicates that he has received both an eye examination and protective eye glasses while at TCI. Thus, Plaintiff admits that the Defendants have provided medical treatment for Plaintiff's eye problem, and the Complaint fails to show "deliberate indifference."

While Plaintiff's Complaint may be interpreted as an action for negligent or incorrect medical treatment, negligence, in general, is not cognizable under 42 U.S.C. § 1983. *See Estelle v. Gamble*, 429

U.S. at 106 (negligent or incorrect medical treatment is not actionable under 42 U.S.C. § 1983); *Daniels v. Williams*, 474 U.S. 327, 328-336 & n. 3 (1986); *Davidson v. Cannon*, 474 U.S. 344, 345-348 (1986); *Ruefly v. Landon*, 825 F.2d 792, 793-794 (4th Cir. 1987); and *Pink v. Lester*, 52 F.3d 73, 78 (4th Cir.1995) (applying *Daniels v. Williams* and *Ruefly v. Landon*: "The district court properly held that *Daniels* bars an action under § 1983 for negligent conduct[.]"). Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 200-203 (1989). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). [3]

Plaintiff next claims that, during the twelve (12) day period of "lock-down", he was subjected to cruel and unusual punishment in the form of limited food, limited showers, and lack of air conditioning. Allegations of unsanitary or inadequate food, *Bolding v. Holshouser*, 575 F.2d 461, 465 (4th Cir. 1978), and complaints about infrequent showers, *Sweet v. South Carolina Dep't of Corrections*, 529 F.2d 854, 861 n. 11 (4th Cir. 1975) may state cognizable claims under § 1983. However, the deprivation must be serious and the Defendant(s) must be deliberately indifferent to the prisoner's needs. *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991).

---

[3] Although claims of negligence and medical malpractice are actionable under South Carolina law, this Court has no jurisdiction over the parties absent diversity or pendant jurisdiction. As Plaintiff and both Defendants are residents of the State of South Carolina complete diversity of parties, pursuant to 28 U.S.C. § 1332(a), is lacking. In regards to pendant jurisdiction, Federal courts may hear and decide state-law claims along with federal-law claims under "supplemental jurisdiction", *Wisconsin Dep't of Corrections v. Schact*, 524 U.S. 381, 387 (1998). However, Plaintiff's federal claims, as discussed in the Report and Recommendation, are subject to summary dismissal. Therefore, the Court should decline to exercise supplemental jurisdiction over any state law claim(s) which may be found in the plaintiff's § 1983 action.

In Plaintiff's Complaint, he lists in detail each meal he received during his time in lock-down. Plaintiff states the Defendants provided three meals daily, however Plaintiff complains that he did not receive a beverage with every meal and that only one "hot meal" was allowed. Plaintiff further indicates that he had three opportunities to shower during the twelve (12) day lock-down, with the first shower being allowed six days into the period.

Plaintiff's Complaint also states that Defendant Jones was attentive to his needs while in lock-down. When working, Defendant Jones provided tea or juice at meal times, and allowed Plaintiff to shower on June 23, 2007. Thus, Plaintiff provides no facts to indicate a serious deprivation of nutritional or sanitary needs during his twelve (12) day segregation, nor does he present sufficient facts to allege deliberate indifference on the part of the Defendants. As such, Plaintiff's cruel and unusual punishment claim, as it relates to "improper food sources and showers", must fail. *See White v. Gregory*, 1 F.3d 267, 269 (4th Cir. 1993)(absent a suggestion of deleterious effects, allegation that prisoner received three meals a day during workweek and two meals per day on weekends and holidays did not state a cruel and unusual punishment claim under the Eighth Amendment).



Plaintiff further states that he was subjected to extremely hot conditions due to the Rimini Unit's lack of air conditioning. Like Plaintiff's food and shower claims, inadequate ventilation, depending on the severity and duration, could state an actionable § 1983 claim, if such a condition causes a serious deprivation. *See Wilson v. Seiter*, 501 U.S. 294, 304-05 (1991). Although Plaintiff indicates that he perspired profusely while in Rimini Unit, the lock-down period was of a short duration and Plaintiff states that he had access to a sliding window "for air to blow or come in." Thus, Plaintiff's failure to be housed in an air conditioned unit during his period of segregation does not rise to the level of cruel and unusual punishment.

8

Plaintiff's final cruel and unusual punishment claim arises from the alleged mistreatment of inmates by prison correctional officers. Plaintiff claims that prison guards physically assault inmates who are secured with hand-cuffs. The law is clear that the Eighth Amendment protects prisoners from excessive force. *Whitley v. Albers*, 475 U.S. 312, 318-19 (1986). However, Plaintiff's Complaint discusses prisoner abuse in general terms and provides no specific instances where Plaintiff has been subjected to cruel treatment/excessive force. In addition, Plaintiff fails to indicate whether any of the named Defendants have ever been involved in the alleged prisoner abuse. Absent factual allegations against the individual Defendants, the Complaint's general claim of cruel and unusual punishment in reference to prisoner mistreatment does not state a claim under § 1983. Although the Court must liberally construe the *pro se* Complaint, Plaintiff must do more than make mere conclusory statements to state a claim. *Brown v. Zavaras*, 63 F.3d 967 (10th Cir. 1995); *Adams v. Rice*, 40 F.3d 72 (4th Cir. 1994); *White v. White*, 886 F.2d 721, 723 (4th Cir. 1989) (complaint dismissed because it "failed to contain any factual allegations tending to support his bare assertion").

Plaintiff also claims that he has been denied access to the courts by being restricted access to the prison's mail-room. Plaintiff states that, since his transfer to Wyboo B Wing, he has been denied his right to pick up or send legal mail. While reasonable access by prisoners to courts and to communication with attorneys is a guaranteed right, *Pecunier v. Hartinez*, 416 U.S. 396, 419 (1974), case law mandates that "a prisoner must provide some basis for his allegation that the delay or failure in delivering his legal mail deprived him of meaningful access to the courts." *White v. White*, 886 F.2d 721, 723 (4th Cir. 1989). Plaintiff's Complaint contains no facts regarding any adverse consequences or detriment suffered as a result of the Defendants alleged refusal to deliver or mail Plaintiff's legal papers. Thus, Plaintiff's denial of access claim is subject to summary dismissal.

9

Plaintiff's final claim involves a verbal threat allegedly made by Defendant Baxter. While a threat of harm, combined with action designed to carry out the threat may state an Eighth Amendment claim, *Hudspeth v. Figgins*, 584 F.2d 1345, 1348 (4th Cir. 1978), verbal abuse of an inmate by guards, without more, states no claim. *Morrison v. Martin*, 755 F. Supp. 683, 687 (E.D.N.C.), *aff'd Morrison v. Martin*, 917 F.2d 1302 (4th Cir. 1990). Here, Plaintiff contends that Defendant Baxter stated "I got something for you," after seeing Plaintiff speak with a visitor in the Unit. While such a verbal threat would be unprofessional and inappropriate, such action does not rise to the level of a constitutional violation, absent some indication that Defendant Baxter took action to carry out the threat.

Finally, it should be noted that Plaintiff's Complaint completely fails to state a claim against three of the named Defendants: Knowlin, Pugh, and Jones. Defendant Knowlin is listed in the Complaint's caption, but is not mentioned anywhere in the body of the Complaint. Absent any personal allegations against this Defendant, it is assumed that Plaintiff is attempting to sue Defendant Knowlin in his supervisory capacity. While supervisory officials may be held liable, in some circumstances, for constitutional injuries inflicted by their subordinates, *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994), certain criteria must be met before such liability can attach. The plaintiff must show that the supervisory official was (1) actually or constructively aware of a risk of constitutional injury, (2) deliberately indifferent to that risk, and (3) that an affirmative causal link exists between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Carter v. Morris*, 164 F.3d 215, 221 (4th Cir. 1999). Plaintiff's Complaint contains no facts regarding Defendant Knowlin which would satisfy the above criteria. Therefore, Defendant Knowlin is not liable in his supervisory capacity and the Complaint against him should be dismissed.

The Complaint should also be dismissed as it relates to Defendants Pugh and Jones. Although Defendants Pugh and Jones are discussed in the Complaint, no facts are alleged against either Defendant to link them to the purported constitutional violations. Defendant Pugh is mentioned only twice in the body of the Complaint (in paragraph numbers 76 and 81). In paragraph 76, Plaintiff apparently was told by another officer that Defendant Pugh had spoken with the Warden. In paragraph 81, Defendant Pugh informed Plaintiff that he was coming "off dead lock now." Defendant Jones is discussed in several of the Complaint's paragraphs, however, in each instance, Defendant Jones is helping the Plaintiff by either providing a beverage, or allowing a shower. In fact, it appears Defendant Jones was very attentive to Plaintiff's needs throughout the Complaint. In order to state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). As Plaintiff has provided no facts against Defendants Pugh or Jones to allege a civil rights violation, they are entitled to summary dismissal.

## Recommendation

Accordingly, it is recommended that the District Court dismiss the Complaint in the above-captioned case *without prejudice* and without issuance of service of process. *See Todd v. Baskerville* 712 F.2d at 74, *Denton v. Hernandez*, 504 U.S. at 31, *Neitzke v. Williams*, 490 U.S. at 324-25. Plaintiff's attention is directed to the important notice on the next page.

October __11__, 2007
Charleston, South Carolina

George C. Kosko
United States Magistrate Judge

11

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P. O. Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).